# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | Chapter 7 |
| ) | 02 B 22977 |
| EMERALD CASINO, INC. ) | Bankr. Adv. No. 08 A 00972 |
| ) | |
| ) | Hon. Eugene R. Wedoff, |
| Plaintiff, Debtor ) | Bankruptcy Judge |
| ) | |
| _____) | |
| ) | |
| FRANCES GECKER, not individually ) | |
| but solely as chapter 7 trustee for the ) | |
| bankruptcy estate of Emerald Casino, Inc. ) | |
| ) | Case No. 11 C 4714 |
| Plaintiff, ) | Hon. Rebecca R. Pallmeyer |
| ) | |
| v. ) | |
| ) | |
| DONALD F. FLYNN, KEVIN F. FLYNN, ) | |
| JOHN P. McMAHON, JOSEPH F. McQUAID, ) | |
| KEVIN D. LARSON, WALTER P. HANLEY, ) | |
| and PEER PEDERSEN, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| In re ) | |
| ) | |
| KEVIN F. FLYNN, JOHN P. McMAHON, ) | |
| JOSEPH F. McQUAID, KEVIN D. ) | Case No. 11 C 7515 |
| LARSON, and WALTER P. HANLEY, ) | Hon. Rebecca R. Pallmeyer |
| ) | |
| ) | |
| Petitioners. ) | |
| ) | |

## MEMORANDUM ORDER

Bankruptcy Judge Eugene Wedoff is presiding over the Emerald Casino bankruptcy. In response to proofs of claim filed by a number of officers and directors of Emerald Casino, the bankruptcy Trustee, Frances Gecker, filed a variety of counterclaims. Judge Wedoff conducted a

lengthy bench trial on those counterclaims in late 2010 and, after several postponements, is scheduled to issue a ruling on Wednesday, February 1, 2012. In consolidated proceedings before this court, the counterclaim Defendants challenge Judge Wedoff's continued exercise of jurisdiction on two grounds: First, in *Gecker v. Flynn,* No. 11 C 4714, Defendants argue that the Supreme Court's ruling in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), strips the bankruptcy court of its authority to enter judgment in certain "core proceedings," a term defined to include "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157 (b)(2)(C). The claims at issue here fall into the category for which the bankruptcy court has no authority to enter judgment, Defendants argue. They contend that this court should therefore withdraw the reference to the bankruptcy court. Second, in *McMahon v. Gecker*, No. 11 C 7515, Defendants ask the court to require Judge Wedoff to recuse himself from the case for reasons that include the judge's son's recent employment as an associate with Jenner & Block, the law firm that represents the Trustee in this matter.[1]

For the reasons explained here, the court concludes that Defendants appear to be correct that Judge Wedoff has no power to enter judgment on certain of the Trustee's counterclaims. Although that determination does not require withdrawal of the reference, the court exercises its discretion to do so in this instance. The petition for a writ of mandamus is therefore terminated as moot.

**Motion to Withdraw the Reference**

The United States Bankruptcy Code authorizes bankruptcy judges to hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." 28

---

[1] The court notes that although the case has been before Judge Wedoff for some time, both motions were filed promptly: Defendants had sought withdrawal of the reference previously, but renewed that request after the Supreme Court issued its opinion in *Stern.* And although they were well aware, long ago, of some of the factors they now cite in support of their request for recusal long ago, the renewed motion was prompted by their learning of the employment of Mr. Wedoff by Jenner & Block beginning in October 2011.

U.S.C. §157(b)(1). Among the list of proceedings defined by the statute as "core proceedings" are "counterclaims by [a debtor's] estate against persons filing claims against the estate." 28 U.S.C. §157(b)(2)(C). With respect to "non-core proceedings," on the other hand–that is, proceedings that are merely "otherwise related" to a case under title 11—a bankruptcy judge may not enter a final judgment, but must instead "submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). The plain language of the Code thus gives Judge Wedoff the authority to enter a final ruling on the Trustee's counterclaims against Defendants in this case, and he conducted a six-week bench trial in November and December 2010. The parties' post-trial briefs followed. Judge Wedoff had not yet ruled on the case when the Supreme Court decided *Stern v. Marshall* in June of last year.

In *Stern,* the Supreme Court announced that a bankruptcy court lacks authority under the Constitution to issue a final judgment in a lawsuit arising solely under state common law seeking to bring assets into a debtor's bankruptcy estate. 131 S. Ct. at 2620. The case arose from a bankruptcy proceeding filed by Vickie Lynn Marshall (known to the world as Anna Nicole Smith). *Id.* at 2601. Pierce Marshall, the son of Ms. Marshall's late husband, filed a proof of claim in her Chapter 11 case, seeking to recover damages for defamation; he claimed Ms. Marshall had falsely accused him of interfering with her expectation of money from her late husband's estate. *Id.* The trustee in bankruptcy responded by alleging tortious interference as a counterclaim against Pierce in the bankruptcy proceeding; specifically, the trustee asserted a common-law tort claim for intentional interference with a testamentary gift. *Id.*

In considering whether the bankruptcy court properly entered a judgment against Pierce, the Supreme Court recognized that the Bankruptcy Code characterizes a counterclaim against a party who has filed a proof of claim as a matter of "core" bankruptcy jurisdiction. *Id.* at 2603 (citing 28 U.S.C. §157(b)(2)(c)). As the Ninth Circuit observed, however, not all such counterclaims are "so closely related to [a creditor's] proof of claim that the resolution of the counterclaim is necessary

to resolve the allowance or disallowance of [the creditor's own] claim," *Stern*, 131 S. Ct. at 2602 (first alteration in original) (quoting *In re Marshall*, 600 F.3d 1037, 1058 (9th Cir. 2010)). The Court concluded that Ms. Marshall's tortious interference claim was "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id.* at 2611. Despite the explicit statutory authority granted to bankruptcy courts in such circumstances, the Court concluded that the bankruptcy judge "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.

In the months since the Supreme Court's ruling in *Stern,* dozens of courts have considered its impact on pending bankruptcy proceedings. Just weeks ago, our Court of Appeals described *Stern* as holding "that Article III prohibited Congress from giving bankruptcy courts authority to adjudicate claims that went beyond the claims allowance process." *In re Ortiz*, ___ F.3d ___, 2011 WL 6880651, at *3 (7th Cir. Dec. 30, 2011) (citing *Stern*, 131 S. Ct. at 2618). In *Ortiz*, a health care provider had filed proofs of claim in hundreds of individual bankruptcy proceedings. *Id.* at *1. The debtors brought two class actions against the provider, alleging that the proofs of claim disclosed confidential medical information, in violation of state law. *Id.* The bankruptcy judge entered judgment against the debtors, and, pre-*Stern*, the Seventh Circuit had permitted a direct appeal of the judgment orders. *Id.* at *1-2. In its December 30 opinion, however, the Court of Appeals concluded that Stern required dismissal of those appeals. Although the debtors' claims arose from the bankruptcy procedures, the bankruptcy judge lacked authority to resolve and enter a final judgment on the debtors' counterclaims because the bankruptcy court did not have to decide those counterclaims in the process of ruling on the health care provider's own claims against the bankruptcy estate. *Id.* at *6.

As the *Ortiz* court explained, the question in *Stern* was whether Article III permits the bankruptcy courts to hear and finally decide a particular type of core proceeding. Under

4

§ 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate" are specifically denominated as core proceedings. The counterclaim at issue in *Stern* was a state common-law tort claim. 131 S. Ct. at 2601-02. The Court acknowledged that Congress had, in § 157(b)(2)(C), designated this kind of claim as "core," but concluded that Article III did not permit the bankruptcy court to hear and finally decide it. *Id.* at 2608. That is, Congress could not delegate to a non-Article III court the judicial power "to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.

The application of *Stern* and its progeny to this case is not completely straightforward. There is no genuine dispute that the Trustee's counterclaims are "core" proceedings; Judge Wedoff so characterized it in several of his scheduling orders, and the Trustee does not effectively argue otherwise. The Trustee suggests, however, that Judge Wedoff may nevertheless have constitutional authority to decide them if those claims are "resolved in the process of ruling on [Defendants'] proofs of claim." (Trustee's Objection to Certain Def.'s Mot. to Withdraw the Reference Pursuant to U.S. Supreme Court Decision on June 23, 2011, in *Stern v. Marshall*, at 13.) Defendants here have no use for fine distinctions; they urge that *Stern*, and the Court's earlier decisions in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) and *Northern Pipeline v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) establish that the bankruptcy court has no constitutional authority to enter final judgments in any "traditional action" seeking money damages for tort, breach of contract, or fiduciary duty under state law which merely seeks to "augment the bankruptcy estate." *Stern*, 131 S. Ct. at 2609, 2614. The Trustee's counterclaim is just such a "traditional action," Defendants urge. Count I is a claim for more than $500 million in compensatory and punitive damages for Defendants' alleged breach of fiduciary duty; Count II is a state law breach of contract claim; Count III seeks disallowance of the Defendants' proofs of claim under 11 U.S.C. § 502(d); Count IV seeks equitable subordination of all these Defendants' proofs of claim on the bases of the same breaches of fiduciary duty and contract alleged in Counts I and II; Count

V, against Defendant Donald F. Flynn, asks the court to classify Flynn's pre-petition loans to Emerald as equity rather than debt; and Count VI seeks disallowance of proofs of claim for amounts owed under a settlement agreement.

This court concludes, contrary to Defendants' insistence, that certain of these claims could indeed be resolved in the process of ruling on the proofs of claim. For example, in the course of adjudicating Donald Flynn's proof of claim, the bankruptcy court may conclude that Flynn's loans to Emerald were equity investments, rather than debt obligations. The bankruptcy court would presumably disallow Flynn's proof of claim in that amount and rule in favor of the Trustee on her counterclaim.

That said, this court agrees with Defendants that not all of the counterclaims appear to be amenable to such resolution. In particular, the Trustee's state law claims for breach of contract and breach of fiduciary duty are state law claims to augment the bankruptcy estate. True, in deciding factual issues as part of the claims resolution process, Judge Wedoff will make determinations relevant to the Trustee's counterclaims as well. But that overlap may not be enough to escape the *Stern* holding; after all, if the trustee in *Stern* prevailed in her claim of intentional interference, presumably the findings supporting that determination would have defeated Pierce Marshall's defamation claim, as truth is a defense to such a claim. That overlap evidently did not satisfy the Court, which observed, "'Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law.'" 131 S. Ct. at 2615 (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 584 (1985)). Though the Trustee would prefer to minimize its reach, *Stern* is indeed "quite significant," *Ortiz,* 2011 WL 6880651, at *3, in its conclusion that bankruptcy courts lack authority to finally adjudicate claims that go beyond the claims allowance process. The Trustee, of course, has far more experience with the claims allowance process than does this court, but she has not pressed the argument that her counterclaims are unaffected by *Stern*. For now, the court concludes that

*Stern* precludes Judge Wedoff's entry of a final judgment on any state law counterclaim that would bring assets into the bankruptcy estate.

The question that follows is whether *Stern* is so significant as to preclude the bankruptcy judge from taking any further action in this case at all. Defendants urge the court to withdraw the reference and insist that the case law requires this result, but the court is less certain. Most significantly, the Supreme Court's opinion does not contemplate withdrawal of the reference in every case where the trustee has asserted counterclaims that the bankruptcy judge may not decide. Instead, the Court expected there would be no "meaningful change" in the courts' workload as a result of its holding:

> [T]he current bankruptcy system also requires the district court to review *de novo* and enter final judgment on any matters that are "related to" the bankruptcy proceedings, §157(c)(1), and permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof, §157(d). Pierce has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute . . . .

131 S. Ct. at 2620 (citation omitted). A fair reading of this language is that a district court may choose to withdraw the reference, but that bankruptcy courts are permitted to hear counterclaims, and to propose a disposition, so long as it is the district court which makes any final decisions.

The conclusion for which Defendants argue—that the bankruptcy judge may take no action at all on the Trustee's counterclaims—thus does not appear to be dictated by *Stern*, and would, as Judge Wedoff observed, have "bizarre" results:

> [a] claim brought by the estate against a creditor who has not filed a claim against the estate would be within the bankruptcy court's related-to jurisdiction, but if the creditor later filed a claim in the bankruptcy case, then—although the estate's claim could have a major impact on the bankruptcy estate by offsetting the creditor's claim–the claim would now be a counterclaim under §157(b)(2)(C), and bankruptcy court jurisdiction would be completely lost.

*In re Emerald Casino, Inc.*, 459 B.R. 298, 300 n. 1 (Bankr. N.D. Ill. Aug. 26, 2011). Judge Wedoff

suggested that a counterclaim not resolved in the process of ruling on a creditor's claim should simply be characterized as non-core. *Id.* Judge Hibbler of this court reached a somewhat similar result in *In re Canopy Fin., Inc.,* No. 11 C 5360, 2011 WL 3911082 (N.D. Ill. Sept. 1, 2011). Recognizing that *Stern* precludes entry of a final judgment by the bankruptcy court in certain core proceedings, Judge Hibbler was unwilling to consign such proceedings to a "'no man's land' on the statutory landscape." *Id.* at *4. He suggested instead that bankruptcy judges who have no jurisdiction to decide certain core proceedings could nevertheless handle such cases as they do "non-core" proceedings.[2] The *Ortiz* court was apparently uncomfortable with this approach. *See Ortiz*, 2011 WL 6880651, at *7 (refusing to "hold that the debtors' complaints were 'not a core proceeding' but are 'otherwise related to a case under title 11'"). Still, while *Ortiz* emphasized that it had no appellate jurisdiction "unless and until" an Article III judge had entered a final judgment, the court nevertheless remanded the case to the *bankruptcy* court, without instructing that court that it could take no further action of any kind.

*Stern* (and, in this Circuit, *Ortiz*) may well result in early withdrawal of a reference in any case where it is clear that a Trustee will bring common law counterclaims that obviously cannot be resolved as part of the claims allowance process. This was the ruling in *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, for example, where the case had been before the bankruptcy court for nearly three years, but there had been "no discovery, no summary judgment motion, and no trial." ___ B.R. ___, 2011 WL 5244463, at *8 (S.D.N.Y. Nov. 2, 2011). Of those courts that have reached the question, however, the overwhelming majority have declined, post-*Stern*, to withdraw the reference, recognizing the value of the bankruptcy judge's familiarity with

---

[2] Indeed, Judge Hibbler observed that *Stern* could be interpreted as stripping the bankruptcy judge of authority to "determine" a fraudulent conveyance claim, but not to "hear" such a claim—admittedly a "less elegant" result "as it leaves the statute silent on what procedures bankruptcy courts should follow in conducting such hearings." *Id.* at *5.

8

relevant law and the facts of the cases before them.[3]

This court's initial impulse was consistent with that consensus. The Trustee's case against Defendants was tried well before *Stern* issued. By the time that decision prompted Defendants to seek withdrawal of the reference, the proofs were closed, the briefing was completed, the case was before Judge Wedoff under advisement, and he had set a date for ruling. The court was reluctant to withdraw the case at that stage, expecting that it would have the benefit of Judge Wedoff's decision within days. He has not yet ruled, however, undoubtedly for valid reasons, and the parties are understandably eager to move this case to the next phase of its resolution.

The Bankruptcy Code permits this court to withdraw a case from the bankruptcy court "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d); *see also In re Dorner*, 343 F.3d 910, 914 (7th Cir. 2003) ( "[D]istrict judges may refer matters to bankruptcy judges but also may withdraw them and render decisions themselves.") Withdrawal is traditionally the exception, rather than the rule, as "bankruptcy jurisdiction is 'designed to provide a single forum for dealing with all claims to the bankrupt's assets.'" *In re K & R Express Sys., Inc.*, 382 B.R. 443, 446 (N.D. Ill. 2007) (quoting *Xonics v. First Wis. Fin. Corp.*, 813 F.2d 127, 131 (7th Cir. 1987)). Prior to *Stern*, at least, courts held that "Congress intended for bankruptcy judges to determine complex Title 11 issues to the 'greatest extent possible.'" *In re Alpern*, 191 B.R. 107, 110 (N.D. Ill. 1995) (citations omitted).

*Stern* may well alter the analysis of this question, but existing authority recognizes the

---

[3] The Trustee has cited a host of such cases. This court cites just two: The same judge who withdrew the reference in *Development Specialists* had earlier concluded, where the bankruptcy court had entered what purported to be a final judgment on certain claims, that review of that judgment *de novo* best comports with the Congressional direction and opinion in *Stern. See In re Coudert Bros. LLP*, 11-2785 (CM), 2011 WL 5593147, at *13-14 (S.D.N.Y. Sept. 23, 2011) *see also In re Heller Ehrman LLP*, ___ F. Supp. 2d ___, 2011 WL 6179149, at *1 (N.D. Cal. 2011) (declining to withdraw reference in the bankruptcy of a law firm, where the estate sued other firms which now employed lawyers previously associated with the firm, seeking recovery on unfinished law firm business).

following factors as relevant to the determination whether withdrawal of the reference is appropriate: (i) whether the proceeding is core or non-core, (ii) considerations of judicial economy and convenience, (iii) promoting the uniformity and efficiency of bankruptcy administration, (iv) forum shopping and confusion, (v) conservation of debtor and creditor resources, and (vi) whether the parties requested a jury trial. *S. Elec. Coil, LLC v. FirstMerit Bank, N.A.*, No. 11 C 6135, 2011 WL 6318963, at *2 (N.D. Ill. Dec. 16, 2011) (citing *In re Beale*, 410 B.R. 613, 616 (N.D. Ill. 2009)).

In this case, considerations of efficiency and familiarity favor leaving the case with the bankruptcy judge, who has heard the evidence and appears to be close to a ruling. His analysis would undoubtedly be helpful, and some of his determinations will likely be acceptable to both sides, or obviously unassailable. The factor of uniformity and efficiency of bankruptcy administration also militates against recusal. The court has no desire to encourage "forum shopping," though it is unclear how many proceedings will fall into the category at issue here—involving counterclaims that cannot be resolved as part of the claims adjudication process and that generate lengthy trials. Even in such cases, the court thinks it is unlikely that large numbers of litigants in other cases will seek to escape from the well-respected judges of our bankruptcy court.

Yet withdrawal of the reference, even at this late stage, could nevertheless eliminate delay and further cost. In this regard, the court takes notice of the pending mandamus petition. Frustrated by this court's failure to rule on the matter of Judge Wedoff's recusal, Defendants have filed a petition with the Court of Appeals, and that court has now invited briefing and comment from the lower courts. From experience, the court recognizes this petition will itself generate substantial effort on the part of the parties and the Court of Appeals, and potentially on the bankruptcy judge himself. This court is not insensitive to the burden of the additional litigation on the recusal issue, and will not comment on its merits other than to observe that both sides appear to have taken good faith positions on the matter. Were this court, or the Court of Appeals, to grant the writ of

mandamus and remove Judge Wedoff from the case, the next step would be *de novo* review of the record by one of Judge Wedoff's colleagues, before it reaches this court for fresh consideration.

On balance, the court concludes that this case presents the unusual circumstance in which withdrawal of the reference is appropriate. Defendants' motion for withdrawal in Case No. 11 C 4714, Doc. 1, is therefore granted. This ruling renders the request for a writ of mandamus in Case No. 11 C 7515 moot; the court expects counsel will withdraw the petition now pending in the Seventh Circuit as well.

ENTER:

Dated: January 31, 2012

_____
REBECCA R. PALLMEYER
United States District Judge